IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CHARLOTTE L. WILKINS-BEAVER, )
                              )
    Plaintiff,                 )
                              )
v.                            )   Case No. CIV-16-556-SM
                              )
COMMISSIONER OF SOCIAL        )
SECURITY ADMINISTRATION,      )
                              )
    Defendant.                 )

**MEMORANDUM OPINION AND ORDER**

Charlotte L. Wilkins-Beaver (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision that she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Doc. 10.

After a careful review of the record, the parties' briefs, and the relevant authority, the court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just h[er] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

B. **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

C. **Relevant findings.**

1. **Administrative Law Judge (ALJ) findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not met her burden of proof. AR 11-31; *see* 20 C.F.R. § 404.1520(a)(2); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, and relevant to this action, the ALJ found Plaintiff:

2

(1) was severely impaired by migraine headaches, bipolar disorder, obsessive compulsive disorder, and personality disorder;

(2) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity[1] (RFC) to perform sedentary work with some limitations: she occasionally can lift and/or carry and push and/or pull ten pounds and frequently can lift and/or carry and push and/or pull less than ten pounds; she can stand and/or walk for a total of two hours in an eight-hour workday and can sit for a total of six hours in an eight-hour workday; she cannot climb ladders, ropes, or scaffolds, and cannot balance; she must avoid exposure to unprotected heights and hazardous, unprotected machinery; she can perform simple tasks with routine supervision but cannot perform customer service work or have any public contact; she can interact appropriately with supervisors and co-workers on a superficial work basis and can adapt to work situations;

(4) was unable to perform any past relevant work;

(5) was able to perform jobs existing in the national economy; and so,

(6) had not been under a disability, as defined in the Social Security Act, from March 31, 2012—her alleged onset of disability date—through September 18, 2014, the date of the ALJ's decision.

AR 19-31.

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

### 2. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision. *Id.* at 1-5; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

### B. Issues for judicial review.

Plaintiff contends the ALJ (1) did not perform a proper evaluation of the medical source evidence; (2) improperly weighed the third-party opinion evidence; (3) erred in finding she did not meet or equal the requirements for

4

Listing § 12.04 Affective Disorder; and (4) performed a faulty credibility determination. Doc. 15, at 2.

C. Analysis.

1. **The ALJ's evaluation of the medical source evidence.**

Through its governing regulations, the SSA tells claimants that, "[g]enerally, we give more weight to opinions from your treating sources . . . ." 20 C.F.R. § 404.1527(c)(2). It explains this is so

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations such as consultative examinations or brief hospitalizations.

*Id.* Binding court precedent underscores the significance of treating source opinion evidence, holding that when an ALJ "evaluat[es] the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser*, 638 F.3d at 1330.

At the first step, the ALJ must determine if the opinion "is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.* If the ALJ finds the opinion is not entitled to

5

controlling weight, he must then proceed to the second step of the inquiry to "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331 (quotation omitted). So long as the ALJ provides a well-reasoned discussion, his failure to "explicitly discuss" all the factors "does not prevent [the] court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ considered treating physicians Dr. Adonis S. Al-Botros's and Dr. Shawn Kharavi's opinions, and determined they were not "consistent with the other substantial evidence in the record." *Krauser*, 638 F.3d 1330, AR 25-27. The ALJ stated she had "considered the opinion evidence in accordance with the regulations and applicable Social Security Rulings that discuss the weight to give a treating doctor's opinion." *Marshall v.* Astrue, 315 F. App'x

6

757-60 (10th Cir. 2009) ("not requir[ing] the ALJ to discuss both components [under SSR 96-2p][2] if one was not met").

On *Krauser*'s second step, the ALJ clarified the weight ("some limited weight") she gave these opinions, and she considered the *Krauser* factors. AR 26, 27, 28. All that the ALJ was required to do was to properly consider and explain her treatment of the treating physicians' opinions. *Krauser*, 638 F.3d at 1330. The court concludes that the ALJ fulfilled her duty.

The ALJ gave "some limited weight" to Dr. Al-Botros's December 18, 2012 opinion. AR 27. She noted the mental impairment questionnaire Dr. Al-Botros completed found Axis I Bipolar I disorder, Axis II deferred, and Axis III migraine headaches. *Id.* at 807, 27. The ALJ observed Dr. Al-Botros identified Plaintiff's symptoms as mood disturbance and difficulty thinking or concentrating. *Id.* at 808, 27. And that he listed "med management" as "Treatment and response." *Id.* She noted he checked off "Fair" or "Poor or none" for all of her "mental abilities and aptitude needed to do unskilled work" and semi-skilled work. *Id.* at 810-11, 27-28. The ALJ indicated Dr. Al-Botros listed as "good" four abilities and aptitude to do particular types of jobs, and one as "fair." *Id.* And finally, the ALJ noted that Dr. Al-Botros indicated

---

[2]    SSR 96-2p, 1996 WL 374188 (July 2, 1996).

7

Plaintiff often has episodes of deterioration and often has deficiencies in concentration, persistence or pace. *Id.* at 812, 28.

Plaintiff argues the ALJ "ignores [her] impoverished functioning fluctuate[d]" and only selected and relied upon "so-called 'normal' assessments . . . ." Doc. 15, at 4. But as the ALJ noted, Dr. Al-Botros's treatment notes appear inconsistent with the mental questionnaire's severe limitations. *Id.* at 28 (citing *id.* at 816 ("mild anxiety," "fully oriented," "organized" thought process, "relevant" thought content, euthymic mood)), 817, 818 (reports feeling "a little better," "doing better," one instance of "cooperative" attitude and one instance of "resistant" attitude, euthymic mood, "appropriate" affect, "intact" and "oriented x3" thought, "intact" memory, "good" judgment, "normal" energy); see *also id.* at 666 ("doing well, no problems" but "anxious" mood); 667 ("doing well on her Meds. No problems" and "anxious" mood); 670 ("doing quite well" with "euthymic" mood); 672 (started Adderall for "poor concentration," "euthymic" mood, intact thought and cooperative attitude); *see also id.* 822 (post-opinion) (noting adequate memory, no psychotic thoughts, normal associations, and that "headaches resolved" after treatment but increased symptoms of depression); 823 (post-opinion) (symptoms "stable," "moderate risk").

Plaintiff's argument the ALJ should have "followed up with Dr. Al-Botros to resolve any conflict or ambiguity" is misplaced. Doc. 15, at 4 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)). Unlike in *Robinson*, here the ALJ did not reject Dr. AL-Botros's opinion, either implicitly or explicitly, nor did she characterize the opinion as "vague." *See* 366 F.3d at 1082-83. Nor did the ALJ neglect to indicate what weight she gave the opinion, or to articulate the reasons she did so. *Id.* at 1083-84. As the Commissioner points out, the ALJ had sufficient evidence to determine whether Plaintiff was disabled. Doc. 20, at 13; *Marshall*, 315 F. App'x at 761 (affirming the denial of benefits where the treating physician's "decision lacked consistency with the records as a whole," which amounts to a "sufficient reason").

The ALJ also gave "some limited weight" to treating physician Dr. Khavari's October 2011 mental status form. AR 28, 411. The ALJ noted the opinion indicated Plaintiff has significant functional impairment during the day secondary to depression, has significant impairments for simple and complex tasks, but that she can handle funds. *Id.* at 28. Dr. Khavari stated she "[h]as been able to work," "has made slight improvement," has a "guarded" prognosis, and is "easily overwhelmed and has difficulty interacting with others." *Id.* at 411; 28. The ALJ noted this opinion also contrasted with Plaintiff's treatment records. *Id.* at 28. Those records indicate Plaintiff's

9

"condition improved with treatment." *Id.* at 24-35. The ALJ determined when Plaintiff ceased taking her medications, her symptoms increased, but she reported feeling better after their resumption. *Id.* at 25. Again, substantial evidence supports the ALJ's conclusions.

Plaintiff objects to the ALJ's accordance of "great weight" to the state-agency psychologists' opinions. Although the ALJ gave the state-agency psychologist consultant's mental RFC assessment great weight, the ALJ imposed additional limitations beyond those recommended. *Id.* at 27. The ALJ concluded Plaintiff cannot interact with the public and should be limited to simple tasks. *Id.* The ALJ based her decision not to give controlling weight to Plaintiff's treating physicians on the conflicting treatment notes and opinions. SSR 96-2p. The ALJ gave specific and legitimate reasons for the weight he gave to the state-agency opinions. 20 C.F.R. § 404.1527. Substantial evidence supports the ALJ's conclusions.

Finally, Plaintiff argues the ALJ should have considered Dr. Roy. M. Isenberg's February 19, 2010 report regarding Plaintiff's psychological testing. Doc. 15, at 5. And she contends the ALJ erred in failing to assign any weight to Dr. Robert R. Waller, while she recited "a good deal of his reported observations." *Id.* at 6.

As the Commissioner notes, Dr. Isenberg's report predates Plaintiff's alleged onset of disability date by more than a year, which is "outside the relevant disability period." *Taylor v. Berryhill*, ___ F. App'x ___, No. 16-5046, 2017 WL 586440, at *3 (10th Cir. Feb. 14, 2017); Doc. 20, at 17; *see Lackey v. Barnhart*, 127 F. App'x 455, 458 (10th Cir. 2005) ("[N]o authority is cited for the proposition that medical reports prior to the operative onset date are categorically irrelevant, and, indeed, our precedent is to the contrary."); *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ.").

"[W]hile the record must show the ALJ considered all the evidence, he is not required to discuss every piece." *Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (citing *Mays*, 739 F.3d at 576). The ALJ must present a "statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Here the ALJ did just that. The ALJ "carefully read and considered all of the evidence, regardless of whether specific references to exhibits appear

in this Decision." AR 22; see *id.* at 21 ("After consideration of the entire record"); see also *id.* 26 (noting "careful review of the record" and "careful consideration of the evidence"); *see also Taylor*, 2017 WL 586440, at *3. When an ALJ states she has considered all the evidence, a reviewing court generally accepts that statement as true. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). Further, the Tenth Circuit has explained, "[t]here is obviously no requirement that the ALJ reference everything in the administrative record." *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010). And as Plaintiff notes, the ALJ considered and relied upon Dr. Waller's report to discredit her credibility. Doc. 15 at 6 n.3 (citing AR 24-25). Plaintiff suggests nothing in Dr. Waller's observations are inconsistent with the RFC, which she also does not challenge.

### 2. The ALJ's weighing of the third-party opinion evidence.

SSR 06-03p provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources like Plaintiff's husband. *See* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). An ALJ evaluates other source opinion evidence by considering: (i) the nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. *Id.* at *6. The ALJ considered and addressed the Third Party Function Report completed

by Plaintiff's spouse but gave that report "only some limited weight." AR at 28, 20, 21. The ALJ discounted the report because Plaintiff's spouse "is not medically trained to make exacting observations . . . ." and "by virtue of the relationship as the spouse of the claimant, she cannot be considered a disinterested third party . . . ." *Id.* at 29. The ALJ noted Mr. Weaver also gave some contradictory information to that given by Plaintiff and gave some information that contradicted Plaintiff's own report. *Id.* at 20. The ALJ also found, "[m]ost importantly, [that] significant weight cannot be given to the report because it is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." *Id.* at 29.

Plaintiff contends this boilerplate rejection amounted to an improper evaluation of the third-party function report. The ALJ considered the entire record. AR 21, 22; *Wall*, 561 F.3d at 1070 ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word.") (alteration and internal quotation marks omitted). The ALJ correctly noted some contradictory statements as one of several factors in discounting them. "The fact that the ALJ is required to consider such third-party statements does not mandate that the ALJ adopt them in full." *Shelton v. Colvin*, 2015 WL 5569024, at *17 (W.D. Okla. Aug. 24, 2015) (unpublished op.); s*ee also Blea v. Barnhart*, 466 F.3d 903, 914 (10th Cir. 2006) ("In actuality, the ALJ is not

13

required to make specific written findings of credibility only if the written decision reflects that the ALJ considered the testimony.") (citation omitted). And, the undersigned's recommended disposition of the ALJ's credibility determination regarding Plaintiff further bolsters the ALJ's evaluation and weight given to Mr. Beaver's function report. *See Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) ("[A]lthough the ALJ's decision does not expressly address this lay witness evidence, any error in failing to do so is harmless because the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.") (citation omitted). Substantial evidence supports the ALJ's assessment of the lay witness opinion.

### 3. The ALJ's alleged step-three error.

The Commissioner has provided a "Listing of Impairments" which describes certain impairments she considers disabling. 20 C.F.R. § 404.1525(a); *see also* Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").

14

Plaintiff argues her mental health diagnoses, her testimony, disability reports, third-party reports and medical records "could have shown she meets or equals Listing § 12.04." Doc. 15, at 8. A severe impairment "meets" a listing if it "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the [twelve-month] duration requirement." 20 C.F.R. § 404.1525(c)(3).

Listing 12.04 covers affective disorders, including depression, "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. pt. 404, subpart P, app. 1 § 12.04. "The required level of severity for these disorders is met when the requirements in both [Paragraphs] A and B are satisfied, or when the requirements in [Paragraph] C are satisfied." *Id.* Paragraph B requires evidence that the depressive syndrome "result[s] in at least two of the following:" marked restrictions performing activities of daily living; marked difficulties maintaining social functioning; marked difficulties maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *See id.* § 12.04(B)(1)-(4).

Plaintiff bears "the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet *all* of the specified medical criteria' contained in a particular listing." *Riddle v. Halter*, No. 00-7043, 2001

15

WL 282344 at *1 (10th Cir. Mar. 22, 2001) (unpublished op.) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in *Zebley*) (brackets added)). "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing. *Sullivan*, 493 U.S. at 530. The "claimant must provide specific medical findings" to establish that a severe impairment meets all of the criteria in a particular listing. *Lax*, 489 F.3d at 1085 (citing 20 C.F.R. § 404.1525).

After considering the medical evidence, the third-party function report, Plaintiff's statement, and her testimony in evaluating Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found no marked limitations in the "paragraph B" criteria. AR 20-21; *see also id.* at 812. The court agrees that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments do not satisfy the paragraph B criteria for Listing 12.04.

The ALJ determined "the evidence fails to establish the presence of the 'paragraph C' criteria." *Id.* at 21. Plaintiff does not argue otherwise. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 10th Cir. 2012) ("We will consider and discuss only those of her contentions that have been adequately briefed for our review.").

### 4. The credibility determination.

Lastly, Plaintiff challenges the ALJ's "faulty" credibility determination. Doc 15, at 9. The ALJ found Plaintiff's statements about the "intensity, persistence and limiting effects" of her alleged symptoms to be "not entirely credible . . . ." AR 26. "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005) (internal quotation marks omitted). However, an ALJ should closely and affirmatively link her credibility findings "to substantial evidence and not just a conclusion in the guise of findings." *Id.* An ALJ's credibility findings reflect her consideration of Plaintiff's allegations of disabling symptoms in order to "decide whether he believe[d them]." *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993) (citation omitted). In making this determination, an ALJ should consider factors such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Wilson*, 602 F.3d at 1145 (citation and quotation marks omitted). But, as long as the ALJ provides the specific evidence he has relied on in assessing a

claimant's credibility, "a formalistic factor-by-factor recitation of the evidence" is not required in the Tenth Circuit. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As the Commissioner points out, the ALJ considered Plaintiff's medication levels and their effectiveness. Doc. 20, at 17-18; AR 23 (Plaintiff "quickly reported significant improvement" in treatment for migraine headaches; "minimal headaches"; headaches are "not as intense"; noting headaches "starting to evolve again" after missing a treatment). AR 23-24, 25, 854, 863. Plaintiff often did "well on her meds," and reported "no problems," but when not on medication, she felt anxious and had insomnia. *Id.* at 25, 26. The ALJ also considered Plaintiff's substantial activities of daily living. *Id.* at 20, 22-23, 26, 28, 203-08. The ALJ concluded that Plaintiff's "acknowledged daily activities and the improvement in her symptoms with medication suggest less limitation than" she alleged. *Id.* at 26. The ALJ considered Mr. Beaver's report, and gave it some limited weight, noting some contradictions within it. *Id.* at 28-29, 20-21. The ALJ closely and affirmatively linked her findings to substantial record evidence, and substantial evidence supports her credibility determination.

### III. Conclusion.

The court AFFIRMS the Commissioner's decision.

ENTERED this 6th day of March, 2017.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE